UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN W. FABIAN,

    Plaintiff,

v.                                                              Civil No. 2:06-CV-10699-TLL-CEB

COMMISSIONER OF                          DISTRICT JUDGE THOMAS L. LUDINGTON
SOCIAL SECURITY,                           MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that the findings of the Commissioner be REVERSED, and that the case be REMANDED for a recalculation of Plaintiff's social security benefits without the application of the windfall elimination provision (WEP).

**II.    REPORT**

    **A.    Introduction**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's final decision regarding the calculation of amount of Plaintiff's retirement benefits. (Tr. at 7- 9.)  This matter is currently before the Court on cross motions for Summary Judgment and Plaintiff's Supplemental Brief.  (Dkts. 13, 18, and 19.)

**B.     Facts and Procedural History**

Plaintiff was born November 21, 1935. (Tr. at 7, 43.) In July 1961, he began employment with the Detroit Police Department. After almost 20 years service, in May, 1981, Plaintiff suffered a stroke.

On June 12, 1982, Plaintiff was notified by the Executive Secretary of the Detroit Policeman and Fireman Retirement System that his request for a Duty Disability Retirement was granted, effective June 16, 1982. (Dkt. 13, Ex. 1.)[1]

On April 9, 1986, Plaintiff received an acknowledgment of his conversion to a Reduced Duty Disability Retirement as of July 10th. (Dkt. 13 at 17.)[2] Subsequently, on July 9, 1986, Plaintiff received an acknowledgment of his election of a Straight Life Retirement Allowance along with a full refund of accumulated contributions. (Dkt. 13, at 18.) Shortly thereafter, Plaintiff began employment with the State of Michigan.

Ten years later, in November, 1996, Plaintiff suffered a stroke, which, according to counsel, occurred shortly after cardiac surgery. (Dkt. 13-2 at 1.) Plaintiff filed an application for Disability Insurance Benefits, (Dkt. 13-2, at 10-12) and according to counsel, Plaintiff was awarded Disability Insurance Benefits on this claim in early March, 1997. (Dkt. 13-2 at 1.)

In December, 2000, Plaintiff received notice that he had become entitled to retirement benefits. (Tr. at 30.) In this same notice, Plaintiff was informed that his benefits were being reduced as a result of a "pension based on work which is not covered by Social Security." (*Id.*)

---

[1]Plaintiff cites numerous documents which do not appear in the administrative record. While review of Social Security determinations under the Administrative Procedures Act are routinely limited to the administrative record, I conclude that the Commissioner does not object to my review of these additional documents. In her brief, the Commissioner states; "Plaintiff has supplied any and all documents he believes are missing from the official record, and this Court has them for its review of this case." (Dkt. 18 at 17.)

[2]Not all page or exhibit numbers in this pleading are readable.

*See also* (Dkt. 13-2, Ex. 1.) Plaintiff sought reconsideration of this unfavorable determination. (*Id.* Ex. 2.)

On March 10, 2001, Plaintiff's request was denied (*Id.*, Ex. 3, Tr. at 60.) In so doing, the Commissioner's representative cited the fact that Plaintiff had received "since July 1986, a periodic payment from your work in employment not covered under Social Security which you were first eligible to receive when you were considered to have acquired 25 years of service credit with the City of Detroit." (*Id.*) The notice goes on to state the Commissioner's position that those payments differed from earlier payments "received from the city of Detroit for periods before July 1986 as a result of a work-related disability. Those payments ended when the periodic payments based on 25 years of service credit began." (*Id.*)

Plaintiff requested a hearing before an administrative law judge (ALJ). (Dkt. 13-2, Ex. 4-5.) Attached to the hearing request is a statement from counsel as well as a letter from the Detroit Police Department confirming that Plaintiff worked for the department from July 10, 1961, to June 18, 1982; that Plaintiff retired from the department, and that he was eligible for pension and retirement as of November 21, 1975. (*Id.*) That request was dismissed as it was determined that Plaintiff had no right to a hearing. (Dkt. 13-2, Ex. 6.) Plaintiff sought review of this unfavorable determination by the Appeals Council. (*Id.*, Ex. 7.) The Appeals Council denied Plaintiffs request for review July 3, 2003. (*Id.* Ex. 9.) On September 30, 2003 Plaintiff received a letter from an Assistant Regional Commissioner stating that "this determination is issued to clear that case while action to have the Appeals Council order vacated is in progress." (*Id.*, Ex. 10.) The letter goes on to state:

> In this case, no substantial evidence has been presented demonstrating all of the following:

> –you were first eligible to receive the periodic payment you now receive from the City of Detroit under appropriate state and local law as it was in effect and being administered through the end of 1985 before 1986. (The current evidence is that you were first eligible to receive the payment you now receive from the City of Detroit on the 25th anniversary of your service to the City, which occurred in July 1986, which is after 1985. The requirement of the 25th anniversary was not removed until about July 1986, again, after 1985. The "continuation of pay" disability pay you received before July 1986 is irrelevant to this matter because you are no longer receiving it. Instead, you are receiving the "regular" city pension (obviously recomputed at a lower ongoing rate in 1986 after you applied for the "regular" City pension).)
> . . . .
> Bottom line – you worked for the City and did not pay FICA taxes on that work. So, your Social Security old age benefit is computed by taking into account what the City pays you for doing work for them on which you did not pay FICA tax.
>
> The question is reserved as to whether, in light of the comments made by your representative about your payment from Detroit being a duty disability payment, Public Disability Benefit Offset under Regulations 404.408 should be applied to your disability benefits for months before full retirement age.
> (Tr. at 41.)

On April 29, 2005, Plaintiff appeared with counsel before Administrative Law Judge Melvyn Kalt (ALJ), who considered the case *de novo*. In a decision dated September 22, 2005 (Tr. at 10-15), the ALJ found that a windfall offset reduction should not have been applied to the calculation of Plaintiff's retirement benefits. (Tr. at 15.) Specifically, the ALJ found:

> The September 2003 Reconsideration determination distinguished the claimant's benefits beginning in 1982 from those beginning in 1986, indicating that the former was immaterial as he was no longer receiving the disability retirement benefits. Rather, he was receiving a "'regular' City pension." Essentially, the argument made is that because the claimants's benefits changed, the prior eligibility was immaterial despite the fact that he became entitled to it prior to 1986 (Exhibit B6).
>
> However, the Regulation states: "We consider you to first become eligible for <u>*a monthly pension*</u> in the first month of which you met all requirements for the pension . . . ." (emphasis added). The Regulation does not distinguish between types of pensions. The Reconsideration determination erroneously referred to the pre-1968 benefits as "'continuation of pay' disability pay." The Administration's own records reflect that this is incorrect. The claimant's earnings have been reported as a *pension* continuously since 1982, irrespective of the calculation involved. The claimant's pension, irrespective of its designation, was based upon the claimant's

4

non-covered service to the Detroit Police Department.  (Exhibits B16 & B17; 20 CFR § 404. 213(3)).

(*Id.*)

Believing the ALJ to have committed an error of law, on its own motion[3], the Appeals Council reversed the findings of the ALJ, finding that:

> Pursuant to section 47-2-6 of the Detroit municipal code, as pertinent, any member prior to eligibility for a service retirement pension shall receive a disability retirement allowance to begin as of the date of disability.  The allowance shall continue until the member reaches eligibility for service retirement.
>
> In response to the Notice of Appeals Council Action, the claimant, through his representative, contends that, in the memorandum from the Great Lakes Program Service Center, the protesting component stated that the only person who could give correct information with respect to PFRS is Walter Stampor, and that no one had contacted him.  The claimant's representative contacted Mr. Stampor who asked David Cetlinski to respond to the Appeals Council.  In a letter dated December 12, 2005, Mr. Cetlinski explained that the benefits paid to the claimant from June 16, 1982 through July 9, 1986 were the City of Detroit's equivalent of workers' compensation benefits, and that the claimant was not eligible to receive his PFRS benefit until July 10, 1986, the date that he would have been eligible to retire on a service pension.  Thus, the windfall elimination provision applies in computing his monthly benefit.

(Tr. at 8.)

---

[3]*See* 20 CFR §404.970, which states:
Cases the Appeals Council will review
    (a) The Appeals Council will review a case if--
        (1) There appears to be an abuse of discretion by the administrative law judge;
        (2) There is an error of law;
        (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
        (4) There is a broad policy or procedural issue that may affect the general public interest.
    (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

On January 30, 2006, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### C. Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam); *Schuler v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 97, 99 (6th Cir. 2004).

### D. Governing Law, Analysis and Conclusion

The issues in this case revolve around section 215(a)(7) of the Social Security Act, 42 U.S.C. § 415(a)(7), and its application to the specific factual circumstances presented by the Plaintiff. This section of the Social Security Act has come to be known as the windfall elimination provision (WEP). The Plaintiff contends that the Commissioner has erroneously applied the provision to him, thereby wrongfully reducing his benefits.

Congress enacted the WEP in order to eliminate the windfall that arises when individuals "split their careers between employment in which their earnings were taxed for social security and other employment, such as [government] employment, in which their earnings were exempt from social security." *Rudykoff v. Apfel*, 193 F.3d 579, 580-81 (2nd Cir.1999). Congress reasoned that an overlap of benefits would occur, because the civil service pensions paid to government employees "are generally designed to take the place both of social security and a private pension plan for workers who remain in government employment throughout their careers." H.R. Rep. No.

6

25, at 21-22 (1983), *as reprinted in* 1983 U.S.C.C.A.N. 219, 239-40.  Without the WEP, a government employee with a civil service-type pension who worked for a brief period in the private sector would be eligible for a "total retirement pension income [that would] most likely greatly exceed that of a worker with similar earnings all under social security." *Id.  See Johns v. Sullivan*, No. 90-P-1587-S, 1991 WL 284081, at *1 (N.D.Ala. Feb. 20, 1991) (noting "the statutory intent to eliminate so-called 'double-dipping' "). In order to allow some time for workers to adjust their retirement plans, Congress determined that the provision applies only to individuals who first become "eligible" for a monthly periodic pension based on noncovered employment *after* 1985. *Id.; see* House Conference Report No. 98-47, 98th Cong., 1st Sess., 121, *as reprinted in* 1983 U.S.C.C.A.N. 411.

The Ninth Circuit has noted that the clause in the WEP most relevant to this case, "who first becomes eligible after 1985 for a monthly periodic payment," is on its face ambiguous. *Das v. Dep't of Health and Human Servs*., 17 F.3d 1250, 1253-54 (9th Cir.1994).  I agree, and suggest that standing alone, the statutory language could be interpreted to support either Plaintiff's or the Commissioner's position. The statute, however, does not stand alone, and as noted by the ALJ, the Commissioner has issued a regulation specifying what is meant by "eligibility": "We consider you to first become eligible for a monthly pension *in the first month* for which you met all requirements for the pension except that you were working or had not yet applied." 20 C.F.R. § 404.213(a)(3) (emphasis added).

Applying these provisions to the facts of the instant case, I suggest that the Commissioner erroneously applied the WEP to the calculation of Plaintiff's social security benefits.  The Commissioner's reliance upon the July 1986 "conversion" date of Plaintiff's Duty Disability Retirement misapprehends Congress's stated intention behind the enactment of the WEP.  As again

7

correctly noted by the ALJ, under 20 C.F.R. § 404.213(a)(3), the first month in which Plaintiff became eligible "for a monthly pension" was June 1982, not July 1986. The ALJ is again correct that neither the WEP, nor its interpretative regulations, specify the *type* of monthly payment to which the recipient becomes eligible.

In addition, I suggest that the interpretation advanced by the Commissioner both misconstrues the Congressional intent underlying the enactment of the WEP, and in this case, defeats that intent. Here, I suggest, there is no "double dipping," as it is undisputed that all of Plaintiff's relevant employment was "non-covered" governmental employment for the City of Detroit Police Department. Accordingly, I conclude that reversal of the Commissioner's finding is appropriate, and suggest that the case be remanded to the Commissioner for recalculation of Plaintiff's social security benefits without the application of the windfall employment provision.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/ *Charles E. Binder*
                                        CHARLES E. BINDER
Dated: January 16, 2007                United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson and Daniel Pulter, and served on District Judge Lawson in the traditional manner.

Date: January 16, 2007                By     s/Jean L. Broucek
                                                      Case Manager to Magistrate Judge Binder