UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN W. FABIAN,

        Plaintiff,

                              Case Number 06-10699-BC
v.                              Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION AND ORDER REVERSING AND REMANDING
TO THE COMMISSIONER, ADOPTING IN PART
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff John Fabian and Defendant Commissioner of Social Security have filed cross-motions for summary judgment in this Social Security benefits case. The parties dispute whether the windfall elimination provision under 29 U.S.C. § 415(a)(7), applies to Plaintiff's Social Security retirement benefits. "The [windfall elimination provision] was enacted to eliminate the unintended benefits windfall that accrued to workers who split their career between employment in which their earnings were taxed for social security and other employment, such as federal employment, in which their earnings were exempt from social security taxes." *Rudykoff v. Apfel*, 193 F.3d 579, 580-581 (2d Cir. 1999) (per curiam). Because the windfall elimination provision applies to benefits commenced after 1985, the disagreement here has centered on whether the the relevant statutory benefit is the monthly benefit Plaintiff began receiving in 1982, because he was determined to be totally incapacitated, or the benefit for which he became eligible upon 25 years of service in 1986.

I.

Plaintiff began working for the Detroit Police Department on July 10, 1961. He suffered a brain aneurysm and stopped working for the police department in 1982. A letter, dated June 22, 1982, from the board of trustees of the Policemen and Firemen Retirement System (PFRS) stated that Plaintiff was approved for duty disability retirement, effective June 16, 1982.[1]

Four years later, in another letter from the PFRS, dated April 9, 1986, Plaintiff was alerted that he would "convert to a [r]educed [d]uty [d]isability retirement on July 10, 1986." He would receive a "gross monthly pension benefit" of $1,294.29. On July 9, 1986, the PFRS followed up with an additional letter approving his "[c]onversion" to the reduced duty disability retirement plan, effective the following day. The letter also stated that he had selected the straight life retirement allowance with a full refund of accumulated contributions and listed his benefit as approximately $1,315.86 per month.

On September 8, 1994, the PFRS confirmed that Plaintiff retired from the police department effective July 10, 1986. The letter stated that he was "first eligible to retire upon reaching twenty-five years of service credit, on June 10, 1986," based on his appointment beginning on July 10, 1961.

At some point, Plaintiff returned to work, but for a private employer. In 1996, he suffered a stroke and then began to receive Social Security disability benefits. On December 25, 2000, Defendant determined that he should receive Social Security retirement benefits, which were reduced due to the application of the windfall elimination provision. Consequently, Plaintiff's

---

[1]This same letter notes a change in effective date to June 18, 1982, but the June 16th date is referenced through the majority of the filings and documentation.

Social Security retirement benefits were reduced by an amount related to his police retirement benefits. Plaintiff contested this determination and requested an administrative hearing.

During the course of the proceedings commenced at that time, more specifically, on January 18, 2001, a police sergeant provided a notice that Plaintiff was eligible for pension and retirement on November 21, 1975, based on Plaintiff's employment from July 10, 1961 to June 18, 1982. On December 12, 2002, the PFRS sent Plaintiff a letter advising him of a change in its federal tax reporting. The letter targets duty disability retirees and makes no reference of "reduced duty disability retirees." A subsequent notice from the PFRS, dated November 19, 2003, confirms that Plaintiff was approved for a duty disability retirement effective June 16, 1982 and "continues to receive [d]isability benefits." On December 12, 2005, the PFRS stated that, as of June 18, 1982, Plaintiff was approved for a duty disability retirement, which made him eligible for an allowance of two-thirds of his base pay. The PFRS, at that time, described the duty disability retirement as "in the nature of and in lieu of [w]orkers [*sic*] [c]ompensation [benefits]." AR at 72. As of July 10, 1986, according to the 2005 letter, Plaintiff had converted to reduced duty disability retirement, which entitled him to a service pension.[2]

The administrative law judge (ALJ) ruled in favor of Plaintiff, concluding that the windfall elimination provision did not apply. The Appeals Council reversed, deciding that Plaintiff was not eligible to receive his police retirement benefits until after 1985; consequently, under 29 U.S.C. § 415(a)(7) and 20 C.F.R. § 404.213(3), the windfall provision did apply.

---

[2]As noted by the magistrate judge, despite the general rule that review is limited to the content of that record, neither party has objected to relying on the additional filings by Plaintiff to supplement the administrative record, which itself refers to documents not contained therein. Consequently, the preceding factual recitation relies on both the administrative record and supplemental filings before this Court.

The magistrate judge recommended reversing the Appeals Council, because 20 C.F.R. § 404.213(3) does not differentiate between types of pensions. Per the magistrate judge, Plaintiff began receiving benefits from the PFRS in 1982, and the fact that the type of benefits were reclassified as another type of benefits in 1986 did not restart the clock on a second pension.

Defendant filed objections to the magistrate judge's report and recommendation. First, Defendant argued that the windfall elimination provision does apply, because Plaintiff only became eligible for retirement benefits from the PFRS upon reaching 25 years of service, which could not have occurred before 1985. Second, Defendant argued that the magistrate judge incorrectly concluded that Plaintiff received the same benefits in 1982 as in 1986. Third, Defendant faulted the magistrate judge for incorrectly relying on the premise that all of Plaintiff's relevant employment was non-covered employment and, thus, concluding that the absence of any "double dipping" showed that the intent of § 415(a)(7) was met. Defendant contends that Plaintiff's employment for a private employer (other than the police department) was covered by Social Security, which then would result in "double dipping."

II.

The standard of review of an Social Security determination imposes a high threshold: "court[s] must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation and internal quotations omitted).

III.

When a person is eligible to receive payments from Social Security, that monthly payment may be reduced to prevent a windfall, if the person is concurrently receiving payments based on earnings from an employer who did not contribute to Social Security, such as a state or municipality. *See* 42 U.S.C. § 415(a)(7). To reiterate, the windfall elimination provision aims to prevent a windfall to employees who have part of their earnings taxed for Social Security, such as during employment for a private employer, and who have part of their earnings go untaxed by Social Security, such as during a period of employment for the federal government. *See Rudykoff*, 193 F.3d at 580-581.

Importantly, a person who first reaches age 65 after 1985 and who first becomes eligible for periodic monthly payments after 1985 from employment without taxation for Social Security will receive a reduced Social Security payment. 42 U.S.C. § 415(a)(7). That is, the reduction in Social Security benefits follows from the application of the windfall elimination provision. 20 C.F.R. § 404.213(3) provides:

> For the same months after 1985 that you are entitled to old-age or disability benefits, you are also entitled to a monthly pension(s) for which you first became eligible after 1985 based in whole or part on your earnings in employment which was not covered under Social Security. We consider you to first become eligible for a monthly pension in the first month for which you met all requirements for the pension except that you were working or had not yet applied. . . .

Hence, the windfall elimination provision applies to benefits payments that a claimant was eligible to receive after 1985. Eligibility is set by meeting the requirements of the pension. Therefore, central to Plaintiff's case is the characterization of his benefits as provided under municipal law, i.e., whether the benefits commenced on July 10, 1986 are a continuation of existing benefits or are distinct from the benefits that commenced on June 16, 1982.

The then-applicable provision regarding duty disability, as provided by city charter and ordinance,[3] states:

> (1) If a member shall become *totally incapacitated* for duty by reason of injury, illness, or disease resulting from *performance of duty* and if the Board of Trustees shall find such injury, illness, or disease to have resulted from the performance of duty, on written application to the Board of Trustees by or on behalf of such member or by the head of his Department, *such member shall be retired*; notwithstanding that during such period of notification he may have separated from service; provided, the Medical director, after examination of such member, shall certify to the Board of Trustees his *total incapacity*. If said member was separated from service after the filing of the written application, and he had attained 25 years or more of service prior to the date of separation, the Board of Trustees shall retire said member . . . .
> (2) A member, . . . retired under [§ 1 above for disability] shall receive the following benefits:
> (a) If such member shall not at the time of his retirement have a total of twenty-five years, of creditable service, *he shall receive a disability pension of sixty-six and two thirds per cent of his final compensation at the time of his retirement*.
> (b) If such member, at the time of his retirement, shall have a total of twenty-five years or more of creditable service or *on the expiration of the period when a member retired and receiving benefits under (a) above would have such total had he*

---

[3]The enactment and amendment of Detroit municipal law reflects an intricate process, at times involving ordinances codified but later "not codified but saved from repeal." *See* Detroit City Code (adopted Aug. 1, 1984; revised Dec. 11, 2006), Ordinances Disposition Table. Yet throughout many revisions, the city has maintained its retirement plans for its police force. *See* Detroit City Code, eff. July 1, 1974, Art. 11, § 11-102 ("The retirement plans of the city existing when this Charter takes effect, including the existing governing bodies for administering those plans, the benefit schedules for those plans and the terms for accruing rights to and receiving benefits under those plans shall, in all respects, continue in existence exactly as before until changed by ordinance adopted in accordance with this article."); *id.* at § 13-107 ("The provisions of the 1918 Charter relating to the . . . police department pension committee, existing when this Charter takes effect, shall in all respects continue in existence exactly as before until changed by ordinance."); 1997 Detroit City Charter, Art. 11, § 11-102 ("The retirement plans of the city existing when this Charter takes effect, including the existing governing bodies for administering those plans, the benefit schedules for those plans and the terms for accruing rights to and receiving benefits under those plans shall, in all respects, continue in existence exactly as before unless changed by this Charter or an ordinance adopted in accordance with this article.") . Although the City of Detroit has further modified the provisions regarding the PFRS after 1986, those revisions are not relevant here.

> *continued in active service*, he shall receive a *reduced disability allowance* computed in the same manner as the allowance provided in Part A of this Article . . . .
> (c) In the case of a member retired and receiving under subsection (a) above, the accumulated contributions standing to his credit at the date of his retirement shall continue to be held in a separate fund in the Annuity Savings Fund and regular interest shall be credited thereto. If such member shall die prior to the time when he would have a total of twenty-five years of creditable service had he continued in active service, the amount of his accumulated contributions so set aside and interest thereon shall be paid as provided in Parts D and E of this article, if such beneficiary shall become entitled to a reduced disability allowance under subsection (b) above, the amount of his accumulated contributions and interest thereon shall be transferred to the Annuity Reserve Fund.

1918 Detroit City Charter, as revised to Jan. 1, 1973, Tit. IX, Ch. VII, Art. VI, Part B, §§ 1-2 (emphasis added).

1918 Detroit City Charter, as revised to Jan. 1, 1973, Tit. IX, Ch. VII, Art. VI, Part A, § 2, further provides:

> Upon his retirement from service, a member . . . shall receive a straight life retirement allowance which shall consist of the benefits provided in paragraphs (a) and (b) below . . . :
> (a) An annuity which shall be the actuarial equivalent of his accumulated contributions standing to his credit in the Annuity Savings Fund at the time of his retirement; and
> (b) A pension, which when added to his annuity, will provide a straight life retirement allowance equal to two per cent of his average final compensation, multiplied by the number of years, and fraction of a year, of his creditable service . . . .

The Appeals Council, while not noting these provisions expressly,[4] relies in its determination on the 2005 letter from the PFRS. According to the PFRS there, the benefit that Plaintiff received from 1982 to 1986 was the City of Detroit's equivalent of worker's compensation benefits. This conclusion comports with a traditional condition for eligibility for worker's compensation benefits,

---

[4] Indeed, the Appeals Council cites instead to "section 47-2-6 of the Detroit municipal code." AR at 8. Yet Detroit City Code § 47-2-1(a) excludes members of the PFRS from the city's general retirement system, to which Detroit City Code § 47-2-6 applies.

i.e., that the Board of Trustees must determine that a claimant has an injury "resulting from performance of duty." 1918 Detroit City Charter, as revised to Jan. 1, 1973, Tit. IX, Ch. VII, Art. VI, Part B, § 1.

That said, every other attribute of the PFRS benefit is consistent with an accelerated retirement benefit. First, the then-applicable City Charter provides that this benefit is only payable upon a certification to the Board of "total incapacity," i.e., that the member's working life is concluded. *Id*. Indeed, the provision directs that upon concluding that a claimant is no longer able to work because of incapacity, the Board "shall retire said member." *Id*. Consequently, the express language of the then-applicable City Charter treats recipients of this benefit as "retired." Second, as written, the then-applicable City Charter permits a claimant's entitlement to retirement benefits, although at the reduced rate of 66 and 2/3 % of the claimant's compensation at the time of retirement. *Id*. at Part B, § 2(a). Yet claimants, who have not yet accrued 25 years of "creditable service," may continue to accumulate service time toward a full 25 years of creditable service and then to receive a benefit allowance "computed in the same manner as the allowance provided in Part A of this Article" – that is, full service retirement benefits, even though they were no longer working. *Id*. at Parts A & B, § 2(b). Thus, the then-applicable City Charter permits claimants to receive the very benefit they would receive upon retirement, albeit reduced by one-third, but still continues their ability to earn service credit toward a full benefit, without requiring actual service.

Given those facts, which are unique to this plan, the benefit Plaintiff received should be properly classified a retirement benefit that, according to the terms of the then-applicable City Charter, commenced in 1982. The increase in the rate of the benefit, effective upon the realization of a full 25 years, does not alter the fact that the Plan's provisions made Plaintiff eligible to receive

-8-

a retirement benefit when he met the requirements for showing his disability and sufficient years of service to have qualified for the benefit. Consequently, Plaintiff became eligible for these benefits prior to 1985, under 20 C.F.R. § 404.213(3). Because of that fact, the windfall elimination provision does not apply to Plaintiff's Social Security retirement benefits.

IV.

Accordingly, it is **ORDERED** that the case is **REVERSED** and **REMANDED** to the Commissioner for recalculation of Plaintiff's Social Security benefits without the application of the windfall elimination provision.

It is further **ORDERED** that the magistrate judge's report and recommendation [dkt #20] is **ADOPTED IN PART**, to the extent not inconsistent with this order.

It is further **ORDERED** that Plaintiff's motion for summary judgment [dkt #13] is **GRANTED**.

It is further **ORDERED** that Defendant's motion for summary judgment [dkt #18] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 21, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 21, 2007.

                                                s/Tracy A. Jacobs
                                                TRACY A. JACOBS